Johnson, J.
It is earnestly contended by the defendant in error, defendant below, that it is shown by the contract between the parties, upon which the plaintiff’s suit is founded, that the improvement referred to was to be fully completed to the satisfaction, acceptance and approval of the defendant on or before the first day of December, 1915; that the terms of the agreement show that time was of the essence of the contract and that therefore the trial court erred in overruling the motion of the defendant to require the plaintiff to make his petition more definite and certain by setting forth the time Within which the contract was completed, or by alleging that he had fully performed the contract on his part. The court of appeals entertained the same view and ' the different grounds of reversal stated in its entry logically followed that conclusion.
Defendant contends that it was a condition precedent to the right of the plaintiff to recover that the work should be completed within the time stipulated, and that in the absence of an allegation such as above stated the petition was defective.
*54 While the contract does not contain a direct stipulation that the plaintiff would complete the work by December 1, 1915, yet it does provide that it should be commenced on the first of May, 1915, and be prosecuted with such force as shall be deemed adequate by the engineer to insure its completion by December 1, 1915, and subsequent terms of the contract provide .for the fixing of stipulated damages to be allowed the defendant for failure to complete within that time.
Section 11339, General Code, provides that in pleading the performance of conditions precedent in a contract it shall be sufficient to state that the party duly performed all the conditions on his part, and it is held in Fire Assn. of Phila. v. Appel, Admr., 76 Ohio St., 1, that where the performance of a condition precedent was prevented by the defendant, such prevention must be averred as an excuse for nonperformance.
Therefore, if it were now necessary to the decision of this case to determine whether the facts stated in the petition are sufficient to constitute a cause of action we would probably hold that they are not, but as shown in the foregoing statement of the case the issue as to the time of performance as a condition precedent was distinctly raised by the answer and the reply. The defects of the petition were supplied in those two pleadings.
The rule is well settled that where such a defect in a petition has been cured by the subsequent pleadings, and it appears from the record that the overruling of a motion or demurrer touching such defect was not prejudicial to the adverse party, , the *55 judgment rendered on the pleadings and evidence will not be reversed on error. Dayton Ins. Co. v. Kelly, 24 Ohio St., 345; Yocum, Admr., v. Allen, 58 Ohio St., 280, and Union Ins. Co. v. McGookey & Moore, 33 Ohio St., 555.
In Dayton Ins. Co. v. Kelly, supra, it is held that where the defect in a petition, to which a demurrer has been overruled, consists in the omission to aver the performance of a condition precedent in the contract sued on, and it appears from the subsequent pleadings and record that the defendant was not prejudiced thereby, the judgment will not be reversed. This holding was in consonance with the provisions of Section 11364, General Code, that in every stage of an action the court must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party.
Now in this case it is undisputed that the improvement was not completed on the first day of December, 1915, but that it was constructed and completed to the satisfaction, acceptance and approval of the defendant on October 11, 1916, and the decisive question presented to the jury was whether the delay in the completion of the work was caused by the action of the defendant, that is, whether in that delay the plaintiff followed the direction of the defendant as averred in the reply.
The trial court refused to permit any testimony touching the contention of the plaintiff that he was prevented from the completion of the work by the weather conditions as alleged, and confined the testi *56 mony to the issue as to whether the delay was caused by the board of commissioners.
In the consideration of the question presented here it is necessary to examine the provisions of the contract and to ascertain the legal relations of the parties under its terms. In the first place it is to be.noted that by the contract the defendant board retained the right to exercise full supervision, direction and control during the progress of the work. It provides that the plaintiff should do the work stated in conformity to the plans and specifications and “under the direction, supervision and control of said party of the second part, together with the County Surveyor or his assistants.” There are further provisions giving full power to the engineer and the commissioners to make certain changes in the work as it proceeded. The provision as to the time of completion was as follows: “It is further agreed and understood that the work embraced in this contract shall be commenced on or before the 1st day of May, A. D. 1915, and be prosecuted with such force as shall be deemed adequate by the said Engineer to insure its completion as an entirety on or before the 1st day of December, 1915, and as heretofore specified. The said Engineer and Commissioners shall be the sole judges whether the work is progressing with sufficient rapidity to insure its completion within the time above specified, and if in their opinion the work is not so progressing they may employ other assistants or declare the contract forfeited, at their option, and complete the work by contract or otherwise at the sole cost of said party of the first part.” Then follow extensive provisions *57 with reference to the manner in which the commissioners may proceed with the completion of the work if they determine to do so.
There is also a provision in the contract that no stoning or graveling shail be put on the roadbed until the grading, etc., has been completed on at least one-half mile in advance of stoning “and a permit given to him to stone or gravel the same.”
It is also provided that no fill over two feet deep should be graveled or stoned until it has had time equal to fifteen days to each foot of depth to settle.
It will thus be seen that there is not here presented a situation in which a contractor was obliged and was given power, after having been placed in possession of the situs of the work, to proceed with the full performance of a contract to do a particular work in a particular way, definitely described by the contract; but that it is a situation in which the contractor has obligated himself to furnish the material and do a particular work according to the plans and specifications under the supervision and control of the board of commissioners and its surveyor.
It was shown by the testimony of the surveyor employed by the defendant that there were several fills and that there were two that had perhaps five feet of earth above the old grade and probably 16 or 17 feet to the side, and as there was to be an allowance of fifteen days to each foot of depth to settle, it can easily be seen that a considerable portion of time would elapse before that portion could bé stoned.
*58 It is evident from the provisions of the contract that the defendant board realized the great importance of having a well-settled, solid base upon which to put the superstructure of the stone and gravel. If the improvement was to be durable this was a necessary prerequisite, and only slight reflection is required to see that considerable time would be necessarily consumed in the process of settling, as specifically defined in the contract.
Between May 1st and December 1st there are 214 days, and a considerable portion of those 214 days would be consumed in any one section of the road in which the fills were of considerable depth, if fifteen days were allowed to each foot as required.
It is conceded by the parties that this road was not in condition to stone in the fall of 1915. It is stated in the brief of the defendant in error: “The evidence shows the board h.ad a right to determine if the road was fit for stoning (p. 163, Record), and all parties testify the road was not fit to stone and that it would not have made a good road, or one according to the contract, if stoned that fall.”
The issue submitted to the jury was whether the board had directed the plaintiff not to stone the road during the fall of 1915 and whether he acted in compliance with those instructions. On this issue the testimony was conflicting.
Mr. Ireland, a witness for the plaintiff, testified that he heard conversations between the contractor and the board of commissioners concerning the stoning of the road, and to the question, “What was the statement made by the Commissioners?” he an *59 swered, “To build the grade in 1915 and stone it the next year, to give it a chance to settle.”
. Mr. Harpster, one of the commissioners, stated that in the presence of the other members of the board, and Stinchcomb, the surveyor, and Mr. Putnam, the contractor, he had expressed himself “that at the time of year, as late as it was it would be advisable for the taxpayer and all to give them an extension until next season over that deep grade where it was about 20 feet, and again they would give that time of 15 days to the foot it would run real late.”
The plaintiff testified that along about the first of October he had a conversation with the commissioners and the county surveyor, who had charg-e of the work, and that Mr. Harpster, in the presence of the board and Mr. Stinchcomb, stated that the stone should not be put on that year “on account that the deep fills were not settled enough.”
“Q. I will ask you if that matter of putting stone on the road that fall was a matter of conversation between the members of the board, Stinchcomb and yourself? A. Yes, sir.
“Q. Talked over by all of you? A. Yes, sir.
“Q. What if anything did any other member of the board say in response to what Harpster said ? A. They sanctioned it and said the grade wasn’t fit, that it was too soft and wasn’t settled enough.”
As already observed the testimony of the other commissioners was in conflict with the testimony above recited and on the issue thus made the jury, found in favor of the plaintiff.
*60 The defendant in error insists that even if it be conceded that the commissioners gave the directions as claimed by the plaintiff with reference to the postponement of the work, it would not be binding on the defendant, nor relieve the plaintiff, because there was no roll call and no record made on the minutes of the board of such action, and attention is called to numerous sections of the Code in which the proceedings of the board and the different steps with reference to the making of valid contracts are provided for.
In this case it will be noted that the plaintiff obeyed the instructions of the board and the following year proceeded with the completion of the improvement, which on its completion was accepted and approved by the defendant and the balance due on account paid to the plaintiff in full, less the sum of $1,472, which the commissioners claimed had accrued as damages under the provisions of the contract with reference to that subject.
As we view the case there was no new contract or order or other step taken by the commissioners which required any entry on their minutes. The statutory requirements had been complied with preliminary to the making of the original contract itself. Any defect that might have been in it was cured by the act' of May 17, 1915, 106 Ohio Laws, 662. When the work was begun there was a valid and subsisting contract between the parties. Everything that was done was done in pursuance of the provisions of the contract, and under the direction, supervision and control of the commissioners and their agent, as the contract provided.
*61 There is no question of estoppel or waiver in the case. The commissioners did what they had a right to do under the agreement. The thing they did was wisely done. By their action they secured a better road and fuller compliance with the letter and spirit of the contract.
Moreover it would seem to be decisive of this case that the contract contained an express provision that no stone or gravel should be put on the roadbed until the grade had been completed in the proportion stated “and a permit given him to stone or gravel the same,” and that no such permit is claimed to have been given. This provision required an affirmative act on behalf of the board before the contractor could proceed.
As already stated, the court of appeals included in its entry the finding that the trial court erred in not submitting to the jury the question whether the completion of the work was prevented by the weather conditions, unaccompanied by any other cause within the control of the plaintiff, for which he was responsible.
In the view we have taken of the case it is not necessary to consider this question.
For the reasons given the judgment of the court of appeals will be reversed and that of the court of common pleas affirmed.

Judgment reversed.

Marshall, C. J., Hough, Wanamaker, Robinson, Jones and Matthias, JJ., concur.